659 So.2d 527 (1995)
STATE of Louisiana
v.
Richard A. PAYN.
No. 92-KA-0975.
Court of Appeal of Louisiana, Fourth Circuit.
July 26, 1995.
*528 M. Craig Colwart, New Orleans, and Daniel L. Dysart, Faye Anne Dysart, Daniel L. Dysart, A Professional Corp., Chalmette, for defendant/appellant, Richard A. Payn.
John F. Rowley, Dist. Atty., Glenn E. Diaz, Walker H. Drake, Jr., Darren M. Roy, Asst. Dist. Attys., Chalmette, for appellee, The State.
Before ARMSTRONG, LANDRIEU and MURRAY, JJ.
MURRAY, Judge.
Appellant, Richard Payn, was convicted of armed robbery. A motion for new trial was denied and he was sentenced to twelve years at hard labor on October 20, 1991. On November 20, 1991, he filed a second motion for new trial, alleging newly discovered evidence. The matter was remanded by this Court to the trial court for consideration of that motion. Following a hearing the trial court denied the motion, and assigned written reasons. The defendant appeals that ruling. The State answered the appeal, and also argues that the sentence imposed on Mr. Payn was illegally lenient. It asks this Court to correct that sentence.
The crime of which appellant was convicted occurred at the Charter Food Store at approximately 1:50 a.m.[1] on Thursday, August 16, 1990. At that point, a man, dressed in shorts, a tee shirt and baseball cap entered the store, walked toward a soda machine approximately five feet from the cash register, and grabbed Shannon Mays around the neck from behind. Holding her around the neck with one arm, he put a knife to her throat with the other. He then ordered Bobby Bishop, a store employee who was standing behind the cash register, to open the register and lock the door to the store. When Mr. Bishop had complied the robber walked him to the back of the store, still holding Ms. Mays with the knife to her neck, and ordered him to enter a cooler. The robber then returned to the front of the store with Ms. Mays, took money from the register, threw Ms. Mays to the floor, unlocked the front door, and ran off.
Ms. Mays identified a picture of Richard Payn from approximately 150 photographs on a bulletin board at the Sheriff's Office the day after the robbery. She and Mr. Bishop each separately identified Mr. Payn from a six photograph line-up. Each also identified him in court as the robber.
The witnesses called at trial were the police officer who conducted the follow-up investigation of this crime, Ms. Mays, Mr. Bishop, and Mr. Richard Payn, Sr., the father of the defendant. Mr. Payn, Sr. testified that, since approximately 1987, his son had a tattoo on his right leg, which consisted of two red hearts with his children's names. The appellant was allowed to show the tattoo to the jurors.[2]
Richard Payn argues that the trial court abused its discretion in denying a new trial. Specifically he complains that: (1) the court did not consider evidence of a psychological stress evaluation (voice stress analysis) performed by Ronald Lauland; and (2) it applied the wrong standard in ruling on the motion, arguing that the court weighed the *529 evidence to determine the guilt or innocence of the appellant. We disagree.
ADMISSION OF RESULTS OF POLYGRAPH EXAMINATION:
Appellant is correct that evidence of a polygraph examination may be introduced at some post-trial proceedings, including consideration of a motion for new trial, within judicial discretion and subject to fairly stringent guidelines[3]. State v. Catanese, 368 So.2d 975, 982 (La.1979). It is not clear from the record on appeal whether a voice stress analysis is the equivalent of a polygraph examination, which measures and records three or more voluntary physiological responses. Even assuming that it is and also assuming that this examination method conformed to the guidelines approved in Catanese, the admission of such evidence is wholly within the trial court's discretion, and we cannot say that the court abused its discretion in this regard.
STANDARD GOVERNING GRANT OF NEW TRIAL:
La.Code of Crim.Proc. art. 851 governs the grant of a new trial. A new trial shall be granted whenever:
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.
Thus, in order to prevail on a motion for new trial, a defendant must establish four elements: (1) that the new evidence was discovered after the trial; (2) that the failure to discover the evidence prior to trial was not due to the defendant's lack of diligence; (3) that the evidence is material to the issues at trial; and (4) that the evidence is of such a nature that it would probably produce a different verdict in the event of a retrial. State v. Knapper, 555 So.2d 1335 (La.1990).
In its reasons for denying appellant's new trial motion, the court stated that it was satisfied that the first two elements required for ordering a new trial were present. For this reason, its decision centered on whether the evidence was "so material on the issues at trial and of such a nature, that it ought to produce a different verdict." p. 2 Reasons for Order. The court pointed out that none of the alibi witnesses ever saw the defendant at the time they allege he was at home, but rather heard the voice of someone who sounded like him.[4] Further the testimony as to when and for how long the appellant's voice was heard was vague and inconsistent. The court, after evaluating the newly discovered evidence as well the evidence presented at trial, determined that the new evidence did not warrant granting a new trial.
Our review on this issue is limited to a determination of whether the trial judge abused its discretion. A trial court assessing the legal merits of such a motion is given considerable latitude in evaluating the reliability of the evidence and its impact on the verdict. State v. Humphrey, 445 So.2d 1155, 1159-60 (La.1984).
Appellant argues that when a guilty verdict is supported by evidence that contains significant contradictions and discrepancies, newly discovered evidence of even minor importance may be sufficient to create a reasonable doubt, citing State v. Hammons, 597 So.2d 990, 998 (La.1992). See, Humphrey, 445 So.2d 1155, 1162, citing United States v. Agurs, 427 U.S. 97, 113, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976) (evidence of relatively minor importance might be sufficient to create a reasonable doubt where the verdict is already of questionable validity). The guilty *530 verdict in the case at bar, however, unlike that at issue in Hammons is not supported by evidence containing significant contradictions and discrepancies. Two eye witnesses identified Mr. Payn. The discrepancies asserted by counsel for Mr. Payn are the fact that neither witness noticed a tatoo on the robber's leg, and the failure of the prosecution to produce fingerprints of Mr. Payn from any surface in the store.
As the Supreme Court noted in Humphrey, "... the test to be employed in considering a motion for a new trial based on newly discovered evidence is whether that new evidence is so material that it ought to produce a different result than the verdict reached not simply whether another jury might bring in a different verdict." 445 So.2d at 1162.
The trial court was well aware of the weaknesses in the State's case against Mr. Payn. During sentencing, imposed on the same date as the denial of the original new trial motion, the court stated:
By virtue of having heard this entire case, I feel there is evidence to support the conviction. That is the reason I denied the motion for a new trial. However, I feel that it would be, by my characterization, the minimal amount that would be required to support this particular conviction, and I am aware of the fact that there was an issue of a lie detector test. Additionally, at one trial, there was an alibi witness who testified. That trial ended in a mistrial. And there was another burglaryI'm sorryrobbery, with which Mr. Payn was charged, in which the witness later recanted her identification and indicated that the person looked exactly like Mr. Payn, according to her. T. Tr. p. 115-116.
Despite these concerns the trial court determined that the newly discovered evidence did not warrant the grant of a new trial. Taking the court's written reasons for refusing to order a new trial at face value, we cannot say that he made a determination of the guilt or innocence of Mr. Payn. Rather, he seems to have weighed the new evidence against the trial record and determined, for the reasons stated, that the new evidence would not result in a different verdict.
In light of the deference given to the trial court on this issue, the court's apparent familiarity with and understanding of its obligation and the requirements for the granting a new trial, and the reasons given for finding that the newly discovered evidence ought not produce a different verdict, we cannot say that it abused its discretion in this case. The judgment denying Mr. Payn's motion for new trial is affirmed.

SENTENCE:
The State argues that the sentence imposed by the trial court is illegally lenient. Mr. Payn was sentenced to serve twelve years at hard labor, the first five years to be served without benefit of probation, parole or suspension of sentence, and the remaining seven years to be subject to whatever guidelines that the Department of Corrections may set forth for this particular offense. La.Rev.Stat. 14:64 provides that a person convicted of armed robbery shall be sentenced without benefit of parole, probation or suspension of sentence. Since the trial court did not stipulate that Mr. Payn's entire sentence be served without benefit of parole it is illegally lenient. For this reason, the case is remanded to the trial court for resentencing.
AFFIRMED; REMANDED FOR RESENTENCING.
NOTES
[1] The exact time of this crime is not clear from the record. The two eye witnesses gave different times: Ms. Mays testified that the man entered the store between 12:30 and 12:45 a.m. Mr. Bishop placed the time at 1:30 a.m. Sergeant Buuck, who conducted the follow-up investigation, testified that the incident occurred at approximately 1:50 a.m.
[2] The record indicated the location of the tattoo, the fact that it was two red hearts with Mr. Payn's two children's names, the fact that the jury was allowed to view the tattoo, but did not provide the dimensions of the tattoo. Appellate counsel advised the court that the tattoo is approximately 3 inches by 3 inches, and is located on Mr. Payn's right calf.
[3] The Supreme Court approved the guidelines establishing eleven points as prerequisites. State v. Catanese, 368 So.2d 975, 976, fn. 1.
[4] In his supplemental brief appellant argues that critical evidence necessary to this Court's consideration of his appeal has been lost. The direct examination testimony of Ms. Elsie Marcel, one of the newly discovered witnesses, was not included in the transcript provided to this Court on appeal. An affidavit from the court reporter states that the notes were lost and this testimony cannot be transcribed. For purposes of this appeal this Court has reviewed the affidavit of Ms. Marcel, dated November 8, 1991, which was made part of the record, and assumed that her testimony on direct examination would have been consistent with that affidavit.